# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **TODRICK MORRIS,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.  6:22-CV-00390-JCB** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **LONNIE  R.  TOWNSEND, SENIOR** | § | |
| **WARDEN, MICHAEL UNIT; LAMORRIS** | § | |
| **MARSHALL,         ASST.       WARDEN,** | § | |
| **MICHAEL UNIT; DOUGLAS FOUST,** | | |
| **LIEUTENANT, MICHAEL UNIT; MARIA** | | |
| **T. DEFOOR, REGISTERED NURSE,** | | |
| **MICHAEL   UNIT;   FRANCISCA   U.** | | |
| **OKUMA,  NURSE  PRACTITIONER** | | |
| **(PROVIDER), MICHAEL UNIT; JOHN** | | |
| **OR    JANE    DOE    1,    SECURITY** | | |
| **PERSONNEL, MICHAEL UNIT; JOHN** | | |
| **OR    JANE    DOE    2,    SECURITY** | | |
| **PERSONNEL, MICHAEL UNIT; JOHN** | | |
| **OR    JANE    DOE    3,    SECURITY** | | |
| **PERSONNEL, MICHAEL UNIT; JOHN** | | |
| **OR    JANE    DOE    1,    MEDICAL** | | |
| **PERSONNEL,  MICHAEL  UNIT;  AND** | | |
| **JOHN OR JANE DOE 2, MEDICAL** | | |
| **PERSONNEL, MICHAEL UNIT;** | | |
| | | |
| **Defendants.** | | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Plaintiff Todrick Morris, an inmate confined at the Texas Department of Justice (TDCJ)

McConnell Unit, proceeding pro se and *in forma pauperis*, filed this civil rights action pursuant to

42 U.S.C. § 1983. This case was referred to the undersigned for findings of fact, conclusions of

law, and recommendations for the disposition of the action. (Doc. No. 3.) Presently before the

court are Defendants Douglas Foust, Lonnie Townsend, and LaMorris Marshall's motion for

judgment on the pleadings (Doc. No. 26), and Defendant Maria Defoor's motion for summary judgment (Doc. No. 27). For the reasons stated herein, the court **RECOMMENDS** that Defendants' motions (Doc. Nos. 26, 27) be **GRANTED** as set forth herein.

## I.    Background

Plaintiff filed his original complaint in federal court on September 30, 2022, alleging that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Specifically, Plaintiff alleged that Defendants refused to allow him to attend his scheduled physical therapy appointments for his right hand. *Id.* Plaintiff maintains that after a serious injury to his right hand and fingers, he required surgery—and states that he still does not have feeling in his right hand and fingers. *Id.* Plaintiff alleges that he has lost range of motion from not "being allowed to participate" in his physical therapy sessions ordered and scheduled by the doctors and therapists. *Id.*

Based upon these allegations, the court dismissed Defendant Pam Pace for failure to state a claim upon which relief can be granted. (Doc. Nos. 4, 35.) Thereafter, the court issued a scheduling order and an order to answer in this matter. (Doc. No. 6.) On October 26, 2022, Plaintiff filed an amended complaint. (Doc. No. 12.)

In his amended complaint, the live pleading in this action, Plaintiff details the injury to his right hand and the failure to be transported to his physical therapy appointments. (Doc. No. 12.) Specifically, Plaintiff alleges that on August 22, 2021, he sustained a serious injury to his right hand that required reconstructive surgery, which he had done on September 1, 2021. *Id.* at 4. Plaintiff contends that after surgery he was told by his treating orthopedist that he would need physical therapy on his hand in order to regain the full range of motion and restore feeling to his right middle and index fingers. *Id.* at 5. Plaintiff contends that he had his first physical therapy

appointment scheduled for February 8, 2022 at the Montford Medical Unit. *Id*. Plaintiff maintains, however, that he was transferred to the Michael Unit on February 1, 2022, and that although he informed Defendant Defoor and other unknown nurses of his recent injury and scheduled physical therapy appointment upon his arrival to the Michael Unit, he was never taken to his physical therapy appointment. *Id.* Plaintiff alleges that on March 10, 2022, he sent a request to Pam Pace informing her that he was never taken to his physical therapy appointment. *Id.* Plaintiff further alleges that he personally told Defendants Defoor and Okuma that he was still without range of motion and feeling in his right hand and that had missed his physical therapy appointment on February 8, 2022. *Id.* at 7. Plaintiff alleges he also sent I-60 requests to Defendants Towsend and Marshall informing them that he was being denied access to his physical therapy appointments. *Id*. at 7–8.

Thereafter, Plaintiff contends that he sent more I-60 requests and filed a Step 1 grievance, to which he received a response on March 14, 2022, stating that "referral has been resubmitted and was waiting for official appointment." *Id*. at 8. Plaintiff contends he received similar responses to his requests and sick calls on March 16, 2022, March 17, 2022, and March 20, 2022. *Id.* Plaintiff alleges that on March 22, 2022, he finally received a response informing him that he had an appointment scheduled in April. *Id.*at 9. Plaintiff states that on April 6, 2022, he received an answer to a sick call from Defendant Defoor informing him that medical has done their part in scheduling his physical therapy appointment and that the rest depends on security. *Id.* Plaintiff then states that both Officer Tingwe and Defendant Douglas Foust were made aware of his physical therapy appointment scheduled for April 7, 2022. *Id.* Plaintiff contends, however, that he was never taken to his physical therapy appointment on April 7, 2022. *Id.* Plaintiff maintains that he continued to experience discomfort and loss of feeling and range of motion in his right hand. *Id.* at 10. Plaintiff

contends that he never refused transport to his physical therapy appointment, but that he was informed he was not transported because of alleged behavior issues at his previous units. *Id.* at 11. Plaintiff maintains that Defendant Foust called Captain Garner, but that Captain Garner informed him that nothing would be forthcoming and that he needed to remain in his cell. *Id.* at 12.

Plaintiff maintains that he followed up with several more I-60 requests and sick call requests and that he was finally taken to physical therapy at the Beto Unit on April 21, 2022. *Id.* at 12–13. Plaintiff contends that the physical therapist confirmed that he needed physical therapy to regain the range of motion and that he should come back in two weeks, and that a follow-up appointment was scheduled for May 12, 2022. *Id.* at 13. Plaintiff alleges that he informed Defendants Defoor, Okuma, and Foust that he needed to attend his physical therapy appointment on May 12, 2022, but that he was not taken to another physical therapy appointment until May 26, 2022. *Id.* at 13–14. Plaintiff contends that the physical therapist informed him that he needed physical therapy to continue improvement in the range of motion in his right hand and that he was scheduled for a three-week follow-up on July 7, 2022. *Id.* at 14. Plaintiff again contends that he was not taken to the physical therapy appointment. *Id.* Plaintiff states that he submitted more I-60 requests and was eventually informed by Defendant Defoor that there was not a follow-up appointment in his records and that Plaintiff refused attendance on July 7, 2022. *Id.* Plaintiff maintains that he never refused any of his physical therapy sessions. *Id.*

Plaintiff maintains that he was scheduled for a physical therapy appointment on September 1, 2022, but that he was not allowed to attend that appointment by Defendant Foust. *Id.* at 16. Plaintiff maintains that he was not seen again by a physical therapist until September 15, 2022, where he was informed that he had missed too many appointments such that there was nothing

physical therapy could do for his hand. *Id.* Plaintiff states that it was recommended he be referred to see an orthopedist/hand specialist. *Id.*

On April 3, 2023, Defendants Foust, Townsend, and Marshall filed a motion for judgment on the pleadings (Doc. No. 26), and Defendant Defoor filed a motion for summary judgment (Doc. No. 27).

## II.    Legal Standard

### a.    Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the court considers the remaining "well-pleaded factual allegations." *Id.* The court must accept as true all facts alleged in a plaintiff's complaint, and the court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted).

In other words, the court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'[D]etailed factual allegations'" are not required. *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### b. Motion for Summary Judgment

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law.

*Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*,

100 F.3d at 1179.

### III.  Discussion

#### a.  Defendants Douglas Foust, Lonnie Townsend, and LaMorris Marshall's Motion for Judgment on the Pleadings (Doc. No. 26)

Defendants argue that they are entitled to judgment on the pleadings because Plaintiff's claims for damages against Defendants in their official capacity are barred by the Eleventh Amendment, Defendants lacked personal involvement with respect to Plaintiff's access to medical care, and Defendants are entitled to qualified immunity. (Doc. No. 26.) Plaintiff contends that both Defendant Townsend and Defendant Marshall personally knew of Plaintiff being denied access to his physical therapy appointments. (Doc. No. 32.) Plaintiff further contends that Defendant Townsend and Defendant Marshall had actual knowledge that there were deficiencies in his medical care. *Id.* at 3. Plaintiff contends that Defendant Foust was the shift supervisor at the time he was supposed to go to his April 7, 2022 appointment that he was denied transport to. *Id.* at 4. Plaintiff further contends that Defendant Foust knew of his physical therapy appointment on May 12, 2022, and that he denied Plaintiff access to that appointment. *Id*. at 4. Plaintiff further contends that Defendants are not entitled to qualified immunity and that he has sued all defendants in their individual and official capacities. *Id.* at 5–6. Defendants filed a reply arguing that Plaintiff does not dispute that Defendants are entitled to Eleventh Amendment immunity, that Defendants lacked personal involvement, and that Defendants are entitled to qualified immunity. (Doc. No. 34.) Plaintiff filed a sur-reply (Doc. No. 36).

#### b.  Official Capacity Claims

Plaintiff alleges, and concedes in his briefing, that he is suing Defendants in both their individual and official capacities. *See* Doc. No. 1, at 8. Plaintiff specifically requests relief in the form of compensatory and punitive damages. *Id.* As such, Defendants argue that Plaintiff's claims

against Defendants in their official capacities are barred by the Eleventh Amendment. (Doc. No. 26, at 2–3.)

At all relevant times alleged, Defendant Lonnie Townsend was the Warden at the TDJC Michael Unit, Defendant LaMorris Marshall was the Assistant Warden at the TDCJ Michael Unit, and Defendant Douglas Foust was an officer employed at the TDCJ Michael Unit. (Doc. No. 1.) The Eleventh Amendment of the United States Constitution grants sovereign immunity to states, therefore making states generally immune from suit in federal court. U.S. CONST. AMEND. XI; *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Moreover, a suit against a state official in their official capacity is barred by the Eleventh Amendment when it seeks monetary compensation for past injuries to be paid from a state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663–64 (1974). Under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits in law and equity against a non-consenting state, or a state agency, by its own citizens. *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1220 (2008). Because Plaintiff's claims against Defendants in their official capacities are claims against the state agency, Plaintiff's demand for relief in the form of monetary compensation for acts by Defendants in their official capacity is barred by the Eleventh Amendment. *See Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009) ("TDCJ is a state agency that enjoys immunity from suit in federal court"); *Harris v. Angelina County, Tex.*, 31 F.3d 331, 338 n. 7 (5th Cir. 1994) ("Under the current state of the law, the TDCJ is deemed an instrumentality of the state operating as its alter ego in carrying out a public function of the state, and is immune from suit under the Eleventh Amendment."). Neither Texas nor TDCJ has waived its immunity in this case. As such, this court lacks jurisdiction over those claims and the claims against Defendants Townsend, Marshall, and Foust in their official capacities should be dismissed without prejudice.

### c. Individual Capacity Claims

Defendants next argue that the individual capacity claims should be dismissed because they lacked personal involvement in Plaintiff's access to medical care. (Doc. No. 26, at 4–8.)

### i. Defendants Townsend and Marshall

Defendants Townsend and Marshall argue that as Warden and Assistant Warden of the TDCJ Michael Unit, they lacked personal involvement in any alleged constitutional deprivation. (Doc. No. 26, at 4–5.) Defendants Townsend and Marshall argue that they were only mentioned twice in Plaintiff's pleadings. *Id.* Therefore, Defendants Townsend and Marshall argue that Plaintiff's deliberate indifference claims against them should be dismissed with prejudice. *Id.* at 5. Plaintiff argues that Defendants Townsend and Marshall had personal involvement in the deprivation of a constitutional right because they received his I-60 requests for medical care and had actual knowledge of the deficiencies in the medical care system at the Michael Unit. (Doc. No. 32, at 3–4.)

To state a section 1983 claim, i.e., make out a violation of a constitutional right, against defendants like Defendants Townsend and Marshall in their individual capacities, a plaintiff must allege that they were personally involved in the actions complained of or are responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under section 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'").

Here, the extent of Plaintiff's allegations against Defendants Townsend and Marshall is that he made I-60 requests notifying them that he requested to attend his physical therapy sessions. (Doc. No. 1, at 14, 15.) These allegations are too tenuous to suggest that Defendants Townsend and Marshall therefore had personal involvement in any alleged Eighth Amendment violation. The mere receipt of requests to attend appointments, without more, fails to show how Defendants Townsend and Marshall were personally deliberately indifferent to Plaintiff's medical needs as Plaintiff alleges. *See Brooks v. Bell*, No. 6:17CV18, 2019 WL 1110132, at *2 (E.D. Tex. Mar. 9, 2019) ("the mere fact that supervisory officials were sent letters or answered grievances does not show personal involvement in a constitutional deprivation."); *see also Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (noting that given the size of the Texas prison system, top-level TDCJ administrators "cannot be expected to intervene personally in response to every inmate letter they receive.").

Moreover, general allegations that they were aware of medical deficiencies on a system-wide basis are insufficient. The Fifth Circuit has explained that a plaintiff's description of a policy or custom and its relationship to an underlying constitutional violation cannot be conclusory but must contain specific facts. *Spiller v. City of Texas City Police Department*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff's pleadings fail to allege any specific facts regarding a policy of denying medical care and fall well short of this standard. *See also Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts which illustrate the defendants' participation in the alleged wrong).

As such, the claims against Defendants Townsend and Marshall should be dismissed with prejudice for failure to state a claim.

### ii. Defendant Foust

Defendant Foust also argues that he lacked personal involvement because the extent of the allegations against Defendant Foust relate to the conversation Plaintiff and Defendant Foust had on April 7, 2022. (Doc. No. 26, at 5.) Plaintiff argues that Defendant Foust had personal involvement with denial of his medical care because Defendant Foust was personally made aware of Plaintiff's appointment on April 7, 2022, and as the security officer on duty, he refused to take Plaintiff to that appointment. (Doc. No. 32, at 4.) Plaintiff similarly contends that Defendant Foust refused to allow Plaintiff to be transported to his physical therapy appointment on May 12, 2022. *Id.*

Here, while Plaintiff alleges Defendant Foust's personal involvement with the refusal to transport Plaintiff to two of his physical therapy appointments, Plaintiff has failed to allege a constitutional violation based upon Defendant Foust's actions. Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v.*

*Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ( "[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment.").

While Plaintiff has alleged that Defendant Foust personally refused to take him to two physical therapy appointments on April 7, 2022 and May 12, 2022, these allegations fail to state a claim for deliberate indifference. First, there are no allegations that Defendant Foust acted with the subjective recklessness necessary to establish a claim for deliberate indifference when he failed to transport plaintiff to two of his scheduled physical therapy appointments. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994) (under a subjective standard, the court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety."). As discussed, Plaintiff alleges that Defendant Foust failed to transport Plaintiff to two follow-up physical therapy appointments, but Plaintiff concedes that he was eventually transported to these appointments on April 21, 2022 and May 26, 2022, a mere two weeks after he alleges to have been initially refused by Defendant Foust. *Id.* at 13–14. Thus, even to the extent Plaintiff alleges that he told Defendant Foust that missing a physical therapy appointment would cause serious damage to his hand, there are no allegations that Defendant Foust subjectively appreciated that a mere two-week delay in transport to Plaintiff's physical therapy appointments would cause him serious harm. Moreover, Plaintiff's own allegations concede that he was not transported to his first appointment due to behavior issues at prior units, not because of some subjective intent on the part of Defendant Foust. (Doc. No. 12, at 11.) Given these allegations, the court finds that Plaintiff has failed to state a claim for a violation of the Eighth Amendment based upon deliberate indifference by Defendant Foust. *See Jones v. Williams*, No. CIV.A. 4:99-CV-779-B, 2001 WL 283101, at *5 (N.D. Tex. Mar. 19, 2001) (finding that failure to transport plaintiff for scheduled follow-up visits did not constitute deliberate indifference to his serious medical

needs). As such, the individual capacity claims against Defendant Foust should be dismissed with prejudice for failure to state a claim.

For these reasons, the court **RECOMMENDS** that Defendants' motion for judgment on the pleadings (Doc. No. 26) be **GRANTED**. The claims against Defendants Townsend, Marshall, and Foust in their official capacities should be dismissed without prejudice and the claims against Defendants Townsend, Marshall, and Foust in their individual capacities should be dismissed with prejudice for failure to state a claim.

### d. Defendant Maria Defoor's Motion for Summary Judgment (Doc. No. 27)

Defendant Defoor has filed a motion for summary judgment arguing that claims against her in her official capacity are barred by the Eleventh Amendment, that the evidence refutes that she acted with deliberate indifference, and that she is entitled to qualified immunity. (Doc. No. 27.) Plaintiff argues that the evidence shows that Defendant Defoor acted with deliberate indifference, that he sued her in both her official and individual capacities, and that she is not entitled to qualified immunity. (Doc. No. 31.) Defendant filed a reply arguing that Plaintiff does not dispute that she is entitled to Eleventh Amendment immunity, that Plaintiff fails to overcome her competent summary judgment evidence, and that she is entitled to qualified immunity. (Doc. No. 33.) Plaintiff filed a sur-reply (Doc. No. 36).

### i. Official Capacity Claims

As an initial matter, Plaintiff has sued Defendant Defoor in her official capacity as a registered nurse for TDCJ, requesting compensatory and punitive damages. *See* Doc. No. 1, at 8. As discussed above, under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits in law and equity against a non-consenting state, or a state agency, by its own citizens. *In re Soileau*, 488 F.3d at 305. Because Plaintiff's claims against Defendant Defoor in her official

capacity are claims against the state agency, Plaintiff's demand for relief in the form of monetary compensation for acts by Defendant Defoor in her official capacity is barred by the Eleventh Amendment. *Cox*, 354 F. App'x at 902; *Harris*, 31 F.3d at 338 n. 7. Neither Texas nor TDCJ has waived its immunity in this case. As such, this court lacks jurisdiction over those claims and the claims against Defendant Defoor in her official capacity should be dismissed without prejudice.

### ii.  Individual Capacity Claims

Defendant Defoor argues that Plaintiff's claims against her for deliberate indifference should be dismissed because the evidence refutes Plaintiff's claim that she acted with deliberate indifference. (Doc. No. 27, at 4–7.)

As discussed above, deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Harris*, 198 F.3d at 159; *Estelle*, 429 U.S. at 97. It is "an extremely high standard to meet." *Domino*, 239 F.3d at 756. Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick*, 105 F.3d at 1061. To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert*, 463 F.3d at 351. Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall*, 190 F.3d at 697 ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment.").

The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. at 839–40. Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Id.* The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.*; *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

As discussed, Plaintiff alleges that he first encountered Defendant Defoor when he arrived at the Michael Unit on February 1, 2022 and he informed her and several other nurses that he had a hand injury that required surgery and that he was scheduled for physical therapy on February 8, 2022. (Doc. No. 12, at 6.) Plaintiff alleges that he informed Defendant Defoor that he was not taken to this appointment on February 8, 2022, and that Defendant Defoor stated she could care less about inmates' medical care. *Id.* at 6–7. Plaintiff alleges that Defendant Defoor notified the medical department of his complaints regarding his right hand and that he missed his physical therapy appointment. *Id.* at 8. Plaintiff further alleges that it was Defendant Defoor who informed him that his next physical therapy appointment had been scheduled by medical. *Id.* at 9. Plaintiff alleges, however, that he was never taken to this appointment, which was scheduled on April 7, 2022. *Id.* Plaintiff states again that he informed Defendant Defoor that he would not regain the full function of his right hand if he didn't go to physical therapy and that she shrugged her shoulders

in response. *Id.* at 12. Plaintiff alleges that he was eventually taken to his physical therapy appointment on April 21, 2022. *Id.* at 13. Plaintiff alleges that he next spoke to Defendant Defoor about attending a follow-up physical therapy appointment on May 12, 2022. *Id.* Plaintiff alleges that he was again not taken to this physical therapy appointment and did not get to physical therapy until May 26, 2022. *Id.* Plaintiff alleges that he contacted Defendant Defoor about this and that she informed him that she did not see any follow-up appointment in his records. *Id.* at 15.

These allegations fail to establish that Defendant Defoor was deliberately indifferent in violation of the Eighth Amendment. *Farmer*, 511 U.S. at 839–40. Although Plaintiff appears to contend that Defendant Defoor was deliberately indifferent because she contributed to him not seeing the physical therapist, which resulted in permanent damage to his right hand, the record does not support such a finding. As an initial matter, Plaintiff's allegations concede that every time he contacted Defendant Defoor regarding his need to go to physical therapy, she was responsive and in fact facilitated the scheduling of his physical therapy appointment in April. (Doc. No. 12, at 6–15.) Similarly, Defendant Defoor informed Plaintiff that he did not make his May appointment because the appointment was not in his records. *Id.* at 15. Ultimately, Plaintiff alleges that he was taken to both of his missed physical therapy appointments on April 21, 2022 and May 26, 2022, just two weeks after they were originally scheduled. *Id.* at 13–14.

Moreover, Defendant Defoor submitted Plaintiff's medical records which show that her only medical encounter with Plaintiff was on March 10, 2022, where he complained of blood pressure problems and dizziness. (Doc. No. 29.) The record states that Plaintiff put down "blood pressure" problems, but that he really came in to report that he had missed his physical therapy appointment when he first arrived at the Michael Unit. *Id.* at 2. Defendant Defoor noted that the plan was to "consult with CCA in regards to rescheduling appointment." *Id.* This is consistent with

Plaintiff's allegations that he was rescheduled after seeing Defendant Defoor for a physical therapy appointment in April. (Doc. No. 12, at 9.)

Although Plaintiff has alleged that Defendant Defoor was aware of the condition of his right hand and his need to go to physical therapy, Plaintiff has failed to show that Defendant Defoor was aware that he faced a substantial risk of serious harm and disregarded the risk by failing to take reasonable measures to abate it. As discussed, the record reflects that Defendant Defoor was consistently responsive and that she put in an immediate request for a physical therapy appointment when she had her only medical encounter with Plaintiff. (Doc. No. 29.) Such a response is not deliberate indifference. While a cause of action for deliberate indifference to an inmate's medical needs can be maintained if there is a delay in access to medical care that results in substantial harm, such a showing has not been made here with respect to Defendant Defoor. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). To the extent it is alleged that Defendant Defoor contributed to Plaintiff's delay in seeing the physical therapist, the record reflects that Defendant Defoor actively scheduled follow-up appointments, and the ultimate delay was not more than two weeks. (Doc. No. 12, at 13–14.) Plaintiff fails to show that Defendant Defoor knew that such a short delay in seeing the physical therapist would risk serious injury to Plaintiff's right hand. At best, Defendant Defoor's conduct with respect to the scheduling delays was negligent. *Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017) ("scheduling delays were, at most, the result of negligence, and negligence does not suffice to state a claim of deliberate indifference."). Further, given these undisputed facts, the allegations that Defendant Defoor shrugged her shoulders or stated that she generally did not care about inmate's medical care fail to establish Defendant Defoor's subjective recklessness. *Gobert*, 463 F.3d at 346. As such, Plaintiff has failed to establish a claim for deliberate indifference against Defendant Defoor.

18

For these reasons, the court **RECOMMENDS** that Defendant Defoor's motion for summary judgment (Doc. No. 27) be **GRANTED**. Plaintiff's claims against Defendant Defoor in her official capacity should be dismissed without prejudice and that claims against Defendant Defoor in her individual capacity should be dismissed with prejudice.

### e. Qualified Immunity

Additionally, all of the Defendants invoke the defense of qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Thompson v. Mercer*, 762 F.3d 433. 436–37 (5th Cir. 2014) (citations omitted).

In determining whether a defendant is entitled to qualified immunity, the court evaluates (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights, and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident. *Stidham v. Texas Commission on Private Security*, 418 F.3d 486, 490 (5th Cir. 2005). These two prongs may be considered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Even if the government official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

After a defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). To overcome a

motion to dismiss based on qualified immunity, a plaintiff must allege facts showing a defendant violated the plaintiff's constitutional rights and the violation was objectively unreasonable. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams–Boldware v. Denton County, Texas*, 741 F.3d 635, 643–44 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (*i.e.* the plaintiff in this case) bears the burden of rebutting the defense." *See Est. of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity…"). "The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity." *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

Here, Plaintiff has failed to meet his burden of overcoming Defendants' invocation of

qualified immunity. As discussed above, Plaintiff has failed to establish a constitutional violation by any Defendant. He therefore failed to clear the first hurdle. Plaintiff further has not shown that any of Defendants' conduct violated clearly established law or that Defendants' conduct was objectively unreasonable. *See Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (in the end, the question is whether the right is sufficiently clear that every reasonable official would have understood what he is doing violates such right); *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998) (even if the government official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable). Defendants are thus entitled to qualified immunity.

### f.  Defendant Francisca Okuma and Doe Defendants

Plaintiff's complaint also brings claims against Nurse Practitioner Francisca Okuma as well as several Unidentified Defendants—namely unknown security and medical personnel. (Doc. No. 1.) Although it appears that Defendant Okuma and the Unidentified Defendants have not been served, the court considers the claims against them. The Fifth Circuit has held that parties not joining a motion are nonetheless entitled to benefit of that motion. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Unserved and defaulting officials are entitled to "benefit from the appearing defendant's favorable summary judgment motion." *Id.*

Here, Plaintiff's allegations against the Unidentified Defendants all relate to his deliberate indifference claim for repeated failure to be transported to physical therapy appointments. *Id.* As discussed above, these allegations do not amount to a constitutional violation and nothing about the facts alleged with respect to the Unidentified Defendants changes the court's analysis. Similarly, Plaintiff's allegations against Defendant Okuma track Plaintiff's allegations against Defendant Defoor—that he complained of his condition to Defendant Okuma, that Defendant

Okuma did not facilitate Plaintiff being sent to physical therapy, and that Defendant Okuma was generally apathetic to Plaintiff's complaints. *Id.* at 7–13. For the reasons stated above, these allegations do not amount to deliberate indifference. Because Plaintiff has already had the opportunity to amend, the court finds that any further amendment would be futile. As such, the claims against Defendant Okuma and the Unidentified Defendants should be dismissed with prejudice for failure to state a claim.

IV.    **Conclusion**

For the reasons stated herein, the court **RECOMMENDS** that Defendants' motion for judgment on the pleadings (Doc. No. 26) be **GRANTED**. The claims against Defendants Townsend, Marshall, and Foust in their official capacities should be dismissed without prejudice and the claims against Defendants Townsend, Marshall, and Foust in their individual capacities should be dismissed with prejudice for failure to state a claim. The court **RECOMMENDS** that Defendant Defoor's motion for summary judgment (Doc. No. 27) be **GRANTED**. Plaintiff's claims against Defendant Defoor in her official capacity should be dismissed without prejudice and the claims against Defendant Defoor in her individual capacity should be dismissed with prejudice. The court **FURTHER RECOMMENDS** that the claims against the Unidentified Defendants and Defendant Okuma should be dismissed with prejudice for failure to state a claim.

Within fourteen days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal

conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 21st day of June, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE